and will remain in challenge until it is sufficiently decreased. Understand? Okay. Thank you. Thank you.  Thank you. Thank you Your Honor, may it please the court. The top court's judgment should be reversed because the agency's determination that a death benefit is not payable to the state is in substantial compliance with the Public Safety Officers Benefit Act and its immunity regulations. And what is the agency interpretation? The agency interpretation is that the plain language of the statute requires a payment to a person or to a parent or parents and that it does not countenance the payment of an estate to the state. Because of the word surviving, because of the word child, I mean what is- Because of the word parent or parents, because- The question right here is a temporal question, Your Honor, and your position is that we're assuming, I think in this case, that the person was surviving at the time of the death of the officer. Yes, Your Honor. Okay, so why is the statute clear that that would be the time frame? Because the statute determines the temporal aspect, which Your Honor referred, refers to the class of certain family members who may be eligible for the payment to the benefit. The statute also directs, Congress specifically directed the agency to make a payment to a parent or parents. Now, this agency believes that that is unambiguous. The child court below held that the statute was silent. Even assuming, for argument's sake, that the statute is silent as to whether an estate may receive a payment, and clearly- You're saying because it says parent or parents, it automatically must go to the individual, not the estate, Your Honor. Yes, an estate is not, the estate of a deceased person is not a person or is not a parent or parents. Boy, I hate to go down this road, and I really didn't want to, but do you notice the absence of the word surviving before the word parent, and the presence of it on one, two, three, four, five, six, seven other occasions? Yes, Your Honor. So, when the Congress said surviving child, surviving spouse, surviving child, surviving spouse, iteratively over and over and over again, then we get to parent, they don't have the word surviving there. How can you say the statute is crystal clear, they meant it to go to the woman in person and not at the state? It's not, the surviving aspect, the modified, incidentally, the regulation, the agency promulgated a regulation to modify parent or parents for surviving. And no one, including the 12 companies, challenged the validity of that regulation, so the parent, too, must be surviving. But there are two elements here. The question is, among who are these groups of individuals that the Congress intends to be eligible for a payment and a benefit. And then there's a mechanical process of precisely how is the agency to make the payment. The payment- I'm going to ask you this, but the mother lived for a month, I understand. If the agency had made the payment after three weeks, would they, and then the mother lived for another week, and then died? Is the agency entitled to recover some kind of share of the payment? No, Your Honor, under those circumstances, under our hypothetical, the two requirements of the statute would be satisfied. There would be an eligible recipient to the payment. I understand the line you're drawing, because the mother was alive when the officer died. So the payment obligation of those, without any question, there's no ambiguity in the statute, which means it's entitled. The question is, how long did she have to live in order to receive the entitlement that was vested the day her son died? She had to live long enough to receive the payment. You're saying that no right vests until she receives the check? Absolutely, and then the- What does that mean? I mean, you said, if the statute says shall pay, you're saying that the statute is clear that it doesn't kick in until surviving means, when you receive the check, when you cash the check, when you receive it in the mail. What's the time frame that you're saying is so clear in the statute? If a living person receives, consistent with the agency's current regulation, if a living payee receives the payment, then all of the requirements of the statute is satisfied. So it's not even when it's paid, it's when it's received? Payment, yeah, the payment must be made to a living payee. No, you just focused on the attorney judge's prose on when they receive it. We're trying to understand exactly what the time frame is. As you can tell, I'm having trouble believing that it's so clear in the statute, given that your verbiage changes with every answer to every question. So what is the exact position of the government with regard to the timing? The current regulation, which is subject to deference. No, you said the statute was crystal clear. So I'm trying to understand the exact time frame under the statute. Under the statute, the statute simply says that the payment must be made to a parent of parents. Under the regulation promulgated in 2006, which is subject to deference under the Supreme Court's decision in Smiley v. Citibank, the payment, to respond to the question as to whether received or made, the state that the regulations provides no payment shall be made, say, to or on behalf of a living payee. So the payment has to be made to the living payee. Yes, you're- Payment made to, what does payment made to mean? When the check is cut on the government's end, when the person gets the check in the mail, when you put the mail, the check in their checking account, the cash for check, what does that mean? Well, to extent it's ambiguous, the agency would need to determine that if the situation were to come up. The issue is, even if assuming the correctness of the trial court's interpretation below that the statute is silent. But by the way, those regulations that you're saying are entitled to deference, those were after this. Yes, but under footnote two in this court's decision in Roth, the court noted that the 2006 regulations which may be implemented in accordance with litigation that pursuant to Smiley v. Citibank, those are entitled to deference. But I can just clarify, going back to Judge Moore's point. Is the government's position here that the statute is unambiguous? Or is its position that the statute is ambiguous, but its regulations are entitled to deference? And therefore, the agency's interpretation is. I'm sorry if I'm unclear, Your Honor. In the first instance, if you were to ask what the agency's position is, the statute's unambiguous. And alternatively, to the extent that the statute is ambiguous, then clearly under this- Well, it seems to me that you've undermined your view that the statute is unambiguous. If you're giving us, you're turning to the regulations to explain what it is the statute means, because there's no clarity in the statute on what it means, right? Well, I may well be here, Your Honor, but in any event, to the extent that the line needs to be drawn as to whether the cut is checked, or whether the check is cleared, etc., etc., then the agency's regulations fill in that gap. Where's the ambiguity of the word surviving? I mean, isn't it clear under any definition of surviving, under any law, a surviving spouse, a surviving person means that they are alive to time the other person dies? Yes, for purposes of the regulation, the word survival, in terms of the statute and for purposes of the regulation, it's used to determine the, it's key to the time of the officer's death. There's no question about that. The question was- Okay, so the entitlement, the statute is clear that they shall pay it to a person who is alive at the time of death. Why is there any ambiguity? Because a payment cannot be made, because the agency, the statute requires the first instance of the payment be made to a parent or parents. The question is, can that be something other than a parent or parents, meaning the estate of a parent? Because the trial court itself conceded that the statute is silent as to that. The agency, within its discretion, made a reasonable interpretation. So then the question devolves, is the agency- I'm having trouble following you. I'm sorry. Then the question becomes, is the agency's interpretation as to whether a surviving parent who becomes deceased, who dies prior to the payment, and so that the payment necessarily has to be made to an estate, is the agency's interpretation that Congress did not contemplate that, is that consistent with the statutory objectives? And as the agency has explained, it most certainly is, because the purposes of the statute are to provide financial assistance to the surviving family members. But let's, I understand, the trial court found the statute was silent. But let's go back to the statute, and your position is it's unambiguous. It says it will pay to a surviving parent. What's unambiguous about that, that it shall pay? That the money is due to the person who lived one moment longer than the following part of time. Because at the time of the payment, the payment, as a practical matter, cannot be made to the parent. Because unfortunately, she died prior to the payment. So the payment cannot be made to the parent. The question is, can the estate, which is not like a trust, the trial court likened this to a situation where trust, the inanimate entity, the payment is being made to an inanimate entity. There's a very big difference between a payment to a trust for the benefit of a living minor child, than to payment on an estate who has heirs, with heirs, who may be the precisely individuals whom Congress decided should not be receiving this benefit. It upsteps the delicate balance, the very specific order of precedence, that Congress provided for recipients of this benefit. And to allow an estate to obtain this benefit can, under various hypotheticals, entirely thwart Congress's objective. It's not the agency's interpretation that is inconsistent with the objectives of Congress. It's the trial court's interpretation. Because you could have, for instance, say for instance a spouse survives. And the spouse dies before the time of payment. So then the payment under the trial court's interpretation would go to the spouse. Well, say the spouse, the spouse's heirs are entirely different people. And meanwhile, under the statute, there's a living surviving parent that may be in desperate need of this benefit. Congress did not intend the heirs of a deceased spouse to be obtaining this financial assistance. But it's not clear from Congress, from the statute, because they say, you know, if no surviving spouse, then to the child. And so you're suggesting that if the spouse survives the death of the officer, but doesn't live long enough to pay the payment, you should ignore the fact that they were surviving at the time of the officer's death. And the money could be redistributed in further accordance with the statute. Is that your position? I just want to make sure I understand. Yes, Congress provided for a very specific guideline by sharing of this economic benefit. Let me just put it. There's no way Congress could control that. Congress didn't say, and that person has to live for ten days. And you're saying, what if a spouse receives the money and then dies the day after she collects the money? Then the situation you pose is exactly the same. And Congress didn't try to prohibit that in any way. It didn't say that, and the only way Congress could control the problem that you're trying to avoid is by somehow requiring that this person be alive for the time and spend it for the time. And there's no way that they obviously can do that. We agree completely with you, Your Honor. That is absolutely true, but lines need to be drawn all the time. And the question is, who's drawing these lines? Congress is drawing the lines in the first instance, and the agency is drawing the lines in the second instance. And there's nothing in this statute, as the trial court concedes, that requires or authorizes the payment to an estate. The most the trial court says. Let me try to understand what you answered in response to Judge Post's question earlier. You agreed that the words surviving spouse mean a spouse who outlives another spouse. And you believe that that's clear and unambiguous, correct? The word surviving spouse. The word surviving is key towards the time of the officer's death. Okay, so, all right. Okay, go ahead. So, why doesn't that control, I guess? Why doesn't that provide the timeline? Why then is there ambiguity in the statute? If the government concedes that surviving spouse means surviving at the time of the officer's death, why then is there any ambiguity over when the payment comes due? Because the statutory language, what language are you looking at? I'm looking at the statutory language. Is it the shall pay? The shall pay a benefit to a pair to pair. So, it's not the surviving, and you can see the surviving means that. You just say that the only way you can comply with the shall pay a benefit is to a person. It's to a person of persons. And the question is, it doesn't say an estate. So, the question is, is the agency's interpretation permissible? That this cannot mean an estate. And- And would Congress have written it otherwise? Would Congress have had to say, and this can be paid to their estate too? There are definitional sections, yes. But the question is, is there any reason why Congress would want the payment to be made to an estate? And for the reason to be- Yeah, but I'm a little reluctant to go down that road. I mean, if we're talking about clear statutory language, that's one thing. If you wanted to, I hate to go down the road of debating what Congress may have wanted or not wanted. Let's leave that to the side. What in here is so clear that shall pay a benefit excludes the payment of that benefit to the estate of survivors? Because an argument in the agency's view, a parent or parents is not the estate. The parents, the purpose of the statute is to provide economic assistance for a surviving person. And an estate is not a person. I mean, don't get me indelicate, but an estate is not a person. So, under group view, under the hypothetical we talked about where the surviving spouse collects the check and then dies the day after. And let's assume you can account for the money when no money has been spent. To effectuate what you perceive as Congress's purposes, does that money automatically go back to the government then? Or automatically go to the next step of the list that Congress has provided? If the surviving beneficiary would be entitled at the time of death and dies prior to payment, then the benefit probably goes to the next eligible living recipient. That's consistent with the agency's regulations, which are again entitled to death, for instance, under Smiley versus Citibank. Even if it's not, if, I mean, let's say I'm the surviving spouse, and I collected the check yesterday, and I dropped dead today. So the money's still sitting there, the check is still sitting there. Does that money go back to the government? Does it go to my estate? Or does it go to my children? So let's assume my estate differs from my grown children. It will go to the heirs of your estate. How does that effectuate the conventional purpose? Well, because there are two requirements of the statute, the survivorship at the time of the officer's death, and then the payment. Once the payment is effectuated, the requirements set forth by Congress have been satisfied, and the chips fall where they may. The question again here is, we have this window between the time of the officer's death and the payment. And is the agency's interpretation of the statute, which is entitled to maximum deference here, is it thwarting the statutory goals? And it is not. I see I've exceeded my time. May it please the court, I'm Rachel Pearson, I represent the estate of Christine Roberts. And Eva White is the executor, and also happens to be the daughter of Ms. Roberts. I think what this panel has hit on is exactly our position. What that statute says is surviving parent. And Ms. Roberts did that, your honor. Who says surviving parent? The regulation, I'm sorry, your honor, I misspoke. Says surviving parent, and what Mrs. Roberts did was survive her son. Her son was killed in July of 2001, and she survived until September of 2008. But what about the hypothetical we talked about earlier with Ms. McCarthy? What about if you're a surviving spouse? And you're surviving as the day of death of your spouse, but you don't survive, but you die a week later. Under your scenario, if I'm wrong, it would go to the surviving spouse's estate, even if that's all to leave it to a museum or to leave it to anything. And none of the parents, if they're being supported by the son, the surviving children would be entitled to anything under your interpretation. Yes, your honor, that is correct. And how would that effectuate the purpose of Congress in terms of caring for living people, using this amount of money to care for living people? I think first of all, your honor, the purpose of Congress, we don't get to in this argument because the statute is clear on its face. That aside, to answer your question, there are several purposes that Congress talked about with this statute. They talked about providing for the economic benefit of those left behind, and they also talked about providing sort of a reward, a recognition for what officers did and how they died in the line of duty. And I think if we start to go down that road of what did Congress intend this money to be spent on, then we find ourselves on this incredibly slippery slope. And here's the reason for that. Say, Judge Post, you are the surviving spouse, and you survive maybe two, three, four weeks, as in your earlier example. And you collect the check, and then you die. Well, is it going to be the agency's responsibility to come and collect some sort of pro-rata share of that money because it won't be supporting you any longer? I mean, hypothetically, if you are the surviving spouse and you receive that check, you can donate it all to charity that day. You can give it to your adult children who wouldn't have been the beneficiaries. So let me give you another hypothetical. Under your interpretation, am I correct that, let's assume we're down to the parent, let's assume there's nobody else that collapsed, and one parent is still alive and had been here for a previously dismissed officer, and the other parent was alive at the date of the death but died the next day. And let's assume they're long divorced and so they've got all kinds of estates that go elsewhere. Under your interpretation, the living, the person, those one parent who's continuous to live on life support, whatever, gets only half of the amount, and the estate of the other person, even though that may be to a number, which is whatever, gets the other half. Yes, Your Honor, that's entirely correct. And that's because this statute does not say surviving until the time you collect the check. In fact, we might- But it says, the governor points to shall pay a benefit. How do you pay a benefit? I mean, can it be fairly construed that the payment of the benefit has to be to a live person, or at least that there's silence as to payment, whether payment of benefit includes an estate and a live person? Your Honor, we can see that there is silence as to whether an estate might be paid. However, I would point to these examples, what the government has already admitted that frequently these payments are made to trust for minor children. Certainly, we're not going to pay $250,000 to a seven-year-old. Similarly, these payments also go to a trust in the case of an incompetent adult who is incapable of managing his or her money. It seems to me that if that's okay under this regulation, that's acceptable, then why would it not be acceptable to pay a Ms. Roberts estate? On a similar vein- Well, because, I mean, depending on what standard we're applying to the agency's interpretation,  to draw a distinction. Now, you may not agree with it, but there is a distinction one can articulate between the trust situation and the estate situation that seems compelling in the backdrop of what the statute is trying to achieve. Yes, Your Honor, exactly. There is a possibility to make that argument, to say, yes, that an estate goes to the heirs or to the beneficiaries of that estate, whereas the trust would go to the incompetent adult or the minor. Exactly, the benefits of which go exactly to the person who is named in the statute, is speaking of that distinction. Except, Your Honor, that they don't necessarily go there, because we come back to that same problem of, what if that incompetent minor dies the following week? Or, I'm sorry, the minor or the incompetent dies the following week? Then we're right back in the same position. Now is the agency going to come and take that money back from the trust and say, because it's not going directly for the purpose? And then we've subverted the purpose of giving a reward by recognition. The agency is arbitrary here, because there's no way you can draw the line. What standard do you think we should apply? This court's standard of review for the trial court is a de novo review. However, the standard that the trial court was looking at in reviewing the agency's decision was looking to the statute. Was there arbitrary and superficial action? But what's the standard of deference when we look at the statute? I mean, is your position of the statute as unambiguous? We're talking about regulations here, however. Yes, Your Honor. First, our position would be that the statute is unambiguous. Alternatively, if it's not unambiguous, if it's not clear on its face, then obviously this court has repeatedly ruled that deference should be given to the government's position when it's reasonable and not arbitrary and superficial. I'm sorry, Judge Moore. That's OK. Let me make sure I understand. You think the statute is not ambiguous because it says, the Bureau shall pay a benefit if there is a surviving child, surviving spouse, all the other stuff. And you think, since everyone agrees, the words surviving child or surviving spouse are clearly keyed into survival at the time of the officer's death. You think that entitlement under the statute arises and is determinative at the time of the officer's death. And if an agency takes a month or four years, as in this case, and the person should happen to die during that time, that's irrelevant. It does seem a little unusual that Congress might ever contemplate the notion that the timing should be completely arbitrary and could take as long as, say, four years. Yes, Your Honor. And I think from a purely public policy perspective, that's what we don't want to happen. And I'm certainly not accusing the BJA in this case of delaying this particular case. However, what we're going to set as precedent is that, well, the timing, survival, is the time when you get the check. Well, then doesn't that encourage the agency to delay when it's necessary? But there's plenty of case law that requires that we assume that the agency is going to behave in good faith and under the normal course. I mean, you're not asking that we ignore that case law. No, Your Honor, I'm not. I'm simply pointing out that in this case, what we would be doing by saying surviving means the time you get the check is making for survivors have no idea when they might be getting it. Counsel, isn't your argument that it would be totally arbitrary and not equally applicable? Because I imagine the agency determines entitlement in one case, perhaps in a very short period of time, in another case, in a very long period of time. There may be no legitimate reason for the difference other than the workload on someone's desk was higher or lower. And it wouldn't make sense that Congress or the agency would have the key detainment in such an arbitrary and capricious way. Yes, Your Honor. And similarly, it's also arbitrary and capricious on the claimant's end. And here's the reason for that. Particularly in some states, the burden at the medical examiner's office is heavy. It's difficult to get an autopsy report back in less than six to eight weeks. In other states, that's not the case. So what we're saying is, if it takes you longer to get your paperwork and your documents together for your claim, and it takes you longer to get paid, and you happen to die in that time, then you don't get your money. However, someone in a neighboring state who gets their full claim filed within two or three days of the officer's death and gets a check back immediately, and dies that next Thursday, does get paid. And that's totally arbitrary. The only possible interpretation of that statute has to be surviving at the time of the officer's death, not at some arbitrary point in the future. Let me just be clear, because your argument, I think, is now that the statute is unambiguous. The trial court did not find the statute unambiguous. The trial court said that the statute was silent as to that. Which then puts you right back in the deference. It absolutely does, Your Honor. Nevertheless, even if we go back to the level of deference, what we find is that total deference is not granted when the agency's interpretation is arbitrary or capricious or simply not reasonable. And in this case, that interpretation that the agency has taken, that is to say, if you don't survive to receive the check, you don't get the check, is completely arbitrary and unreasonable. And in that case, this court is not required, then, to grant total deference to the agency. Well, maybe, does it seem less arbitrary to you if we're not down to category four, but if we're up to category one? I mean, in your instance, it goes, the money goes back to the government, so in the hypothetical I gave you earlier, if the surviving spouse is deceased at the time of the check is claimed, it goes either to children or to needy parents. Another group that Congress could contemplate. So, I mean, it seems, did you concede that it seems less arbitrary or less inequitable if we're talking about the first category than the last? I concede, Your Honor, that it does. Nevertheless, it doesn't make it any better or permissible of an interpretation to say, well, just because there's some surviving children and the spouse is deceased, then we'll give it to the children. In all likelihood, the estate of that surviving spouse might be going to those children as well. We have no way to know that. And that comes back to the fact that Congress didn't make any requirement on how this money be spent. Congress didn't say, now you survivors, once you collect this check, should only spend it for this sort of benefit. You shouldn't give it away to charity. They didn't do that. They said, you're still a part of it. You may be correct that we don't care what the legislative history says. And you may be correct that there's not one exclusive purpose stated in the legislative history. But you do acknowledge, do you not, that there is legislative history suggesting that at least one of the purposes of the statute is to care for, perhaps not dependent, because they took that word out, but at least people who were reliant on- Absolutely, that's definitely the case. We see it also in the fact that the surviving children, even if they're over 18, receive that payment if they're in college. And we assume that Congress meant, well, they probably need some financial assistance. However, our assumption and our looking at the legislative history doesn't really come into play if we just look at the statute and say it's paid to a parent. And in this case, Ms. Roberts was Sheriff Presley's parent. And Sheriff Presley was killed in the line of duty. That has never been disputed. The problem is, she didn't survive to receive her check. She was 86 years old at the time of his death. She should not be penalized because of that. And under the agency's current interpretation, that was penalized. Counsel, you would say the purpose, I assume, of Congress, even if it was to provide support for people, in the case of parents, they removed that language from the statute. So whether they don't need support because they're independently wealthy or whether they don't need support because they're dead is irrelevant. Exactly. In the legislative history, we see that the word dependent- After, of course, the trigger, which is the officer's death. Right. They would have- How to survive that. Yes, Your Honor. They would have to survive the officer. But after that point, we see that trigger word dependent was originally there in the statute and then was removed, presumably because the sole purpose is not to provide economic support. I'm certain across the country, there are many parents of slain officers who don't actually need the financial support, yet they still receive the payment because they survived their slain child, not only after the death, but presumably under this interpretation, until they received the check. The problem in my case was not a question about the line of duty, not a question about survival. It was a question of that she died prior to receiving that check. And that is a totally and completely arbitrary ruling as to the statute. Any more questions? Any more questions? Okay. Your Honors, we would respectfully ask that the trial court's decision be upheld. Thank you. Thank you, Your Honor. First of all, on page six of the joint appendix, I just want to clarify to be clear that the trial court used precisely the wrong standard of review. The trial court stated on page six, the Supreme Court has also clarified that deference does not extend to agency statutory interpretations found outside the regulations in rulings, opinion letters, and the like. And the court cites me and Christensen v. Harris. That standard of review is precisely incompatible with this court's ruling. The agency's interpretation in this case and its 2006 regulation is entitled to deference. What about Judge Moore's point about the arbitrariness of the agency's position? Because it can be, assuming good faith, assuming normal course of activity, you are reading enough that we can be looking at anything from one month to ten years, in terms of the time between the death and the payment of the check, right? Well, that timeframe is completely dependent on things that have nothing to do with anything other than the workload of the agency, whether or not there are times when the agency could have been wrong in the first instance and you had to go to litigate that. I mean, why should the recipient have to bear those burdens? Why would Congress have wanted one person to get it because the agency happened to officially move the check out the door and they were alive one month later, but not the person who receives the, who when the check is cut four years later and the person only lived four years? Well, I think, Your Honor, the agency's position is that the person, the living person should be the one that should be receiving this benefit. But whether or not they're alive is contingent on so many other factors that are partly in the agency's control, partly in the judicial system's control. Doesn't it seem arbitrary to draw that line? No, Your Honor. I mean, this court is controlled by Semple, the court of claims decision in Semple v. United States, which recited our brief, which provides that an officer or soldier dying before he receives a gratuity has at the time of his death no legal right which could be the subject of attachment, execution, assignment, or testamentary bequeath. The Supreme Court has held unambiguously that this program is a gratuity. So there are no legal vested rights that a surviving parent attains. There simply, there are no vested rights. So to the extent that the agency takes a certain amount of time to effectuate the payment, there is no vested right on behalf of the recipient. But I don't understand, actually, but I don't understand this whole argument about gratuity in the brief. Because it seemed to me the argument you were making is that it doesn't vest until the agency determines that the officer's death qualifies. That that's the gratuity aspect of this, not to the issue we're talking about here, which is whether or not the recipient is alive or not. Am I wrong about that? Well, yeah, we're saying that there is, this is simply true. It doesn't vest until there's a, the officer's death is qualified. No, well, under Semple, under Semple v. United States, it says an officer or soldier dying before he receives a gratuity has at the time of death no legal right that can be subject to attachment of the creed. In other words, Ms. Roberts did not have a vested right to this payment upon her son's death. That's simply the point we're making. The point we're making, and I must take issue with what counsel said, this is not to penalize Ms. Roberts, because with all respect to Ms. Roberts, it's to penalize her heirs. And her heirs are not the focus of the legislative history. If this is a Chevron Step 2 case, then the analysis of the trial court should have applied, is the agency's interpretation thwarting the objectives of Congress, and Congress intended for, to provide economic assistance for the surviving family members. Yes, Your Honors, I'll pose lines at which, you know, inequitable results may happen, but lines need to be drawn somewhere. And as I stated before, Congress draws those lines in the first instance, and to the extent that there's a gap that needs to be filled in, it's drawn by the agency. And so long as those lines have some sort of reason and are not arbitrary capricious, and there's certainly nothing arbitrary capricious about suggesting that a living recipient, be it a parent, a child, or a spouse, should be enjoying this economic assistance, and not the heirs, not the present estate. Thank you so much, Your Honors.